# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO.: 15-11277-CC, 15-12650-CC
### L.T. Case No.: 9:12-cv-80898

ADT, LLC,

     Appellant/Plaintiff,

v.

ALARM PROTECTION TECHNOLOGY
FLORIDA, LLC, ALARM PROTECTION
TECHNOLOGY, LLC, ALARM
PROTECTION TECHNOLOGY
MANAGEMENT, LLC, ALARM
PROTECTION TECHNOLOGY
HOLDINGS, LLC, JACOB DAHL and
ADAM SCHANZ,

     Appellees/Defendants.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

---

## **APPELLEES' BRIEF**

<u>MAILING ADDRESS</u>:

JACK J. AIELLO
MICHAEL W. MARCIL
JENNIFER NICOLE
GUNSTER, YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
561-6551980
*Attorneys for Appellees*

FTL_ACTIVE 4637037.1

*ADT v. Alarm Protection Technology Florida, LLC, et al.*
No. 15-11277-CC, 15-12650-CC
**CIP - 1 of 3**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The following persons and entities have an interest in the outcome of this

appeal:

ADT LLC (Plaintiff)

ADT US Holdings, Inc. (Plaintiff's member)

Aiello, Jack (Defendants' counsel)

Alarm Protection Technology Alabama, LLC (Defendant Affiliate)

Alarm Protection Technology Alaska, LLC (Defendant Affiliate)

Alarm Protection Technology Arizona, LLC (Defendant Affiliate)

Alarm Protection Technology Arkansas, LLC (Defendant Affiliate)

Alarm Protection Technology California, LLC (Defendant Affiliate)

Alarm Protection Technology Colorado, LLC (Defendant Affiliate)

Alarm Protection Technology Florida, LLC (Defendant)

Alarm Protection Technology Georgia, LLC (Defendant Affiliate)

Alarm Protection Technology Holdings, LLC (Defendant)

Alarm Protection Technology Housing, LLC (Defendant Affiliate)

Alarm Protection Technology Kentucky, LLC (Defendant Affiliate)

Alarm Protection Technology Louisiana, LLC (Defendant Affiliate)

Alarm Protection Technology Management, LLC (Defendant Affiliate)

Alarm Protection Technology Mississippi, LLC (Defendant Affiliate)

Alarm Protection Technology Missouri, LLC (Defendant Affiliate)

Alarm Protection Technology North Dakota, LLC (Defendant Affiliate)

Alarm Protection Technology South Dakota, LLC (Defendant Affiliate)

Alarm Protection Technology Tennessee, LLC (Defendant Affiliate)

Alarm Protection Technology Texas, LLC (Defendant Affiliate)

Alarm Protection Technology, LLC (Defendant)

APT Holdings, LLC (Defendant Affiliate)

Boies Schiller & Flexner, LLP (Plaintiff's counsel)

Dahl, Jacob (Defendant)

Gunster Yoakley & Stewart, P.A. (Defendants' counsel)

Hamilton, Sherry (Plaintiff's counsel)

Hopkins, The Hon. James M.

Marcil, Michael (Defendants' counsel)

McNew P.A. (Plaintiff's counsel)

McNew, Charles Sanders (Plaintiff's counsel)

Mitchell & Barlow, P.C. (Defendants' counsel)

Mitchell, J. Ryan (Defendants' counsel)

Nevers, Russell (Defendants' counsel)

Nicole, Jennifer (Defendants' counsel)

Ryskamp, The Hon. Kenneth L.

Schanz, Adam (Defendant)

Sires, Carlos M. (Plaintiff's counsel)

The ADT Corporation (Plaintiff's ultimate shareholder)

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe oral argument is necessary in this case, as there is no undecided issue of law to be decided on this record, and the written record before the Court requires no amplification.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
        DISCLOSURE STATEMENT................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS....................................................................................... ii

TABLE OF CITATIONS ..................................................................................... iv

PREFACE ........................................................................................................... vii

STATEMENT OF THE CASE..............................................................................1

        A.      Course of Proceedings .....................................................3

        B.      Statement of the Facts......................................................6

        C.      Standard of Review .......................................................15

SUMMARY OF ARGUMENT .............................................................................16

ARGUMENT ........................................................................................................20

    I.      THE DISTRICT COURT DID NOT ERR BY
           REFUSING TO GIVE A JURY INSTRUCTION ON
           INITIAL INTEREST CONFUSION ......................................20

        A.      The District Court Did Instruct the Jury on Initial
           Interest Confusion...........................................................21

        B.      This Court Need Not Reach the Question of
           Whether Initial Interest Confusion Is Actionable In
           The Eleventh Circuit Because the Jury Found No
           Confusion of Any Type ...................................................23

        C.      The District Court Did Not Abuse Its Discretion In
           Refusing To Give The Proposed Initial Interest
           Confusion Instruction .....................................................26

           (1)    Element 1: ADT's Proposed Instruction Is
                Not An Accurate Statement Of The Law In
                The Eleventh Circuit ...........................................28

           (2)    Element 2: The issue is not before the jury.........30

           (3)    Element 3: There is no prejudice ........................30

II.     THE DISTRICT COURT DID NOT ERR BY
REFUSING TO INSTRUCT THE JURY ABOUT
PROTECTIONS FOR TRADEMARKS CONSISTING
OF WORD AND LETTER COMBINATIONS......................34

III.   THE DISTRICT COURT DID NOT ERR BY
REFUSING TO INSTRUCT THE JURY ON ADAM
SCHANZ'S INDIVIDUAL LIABILITY ................................39

IV.   ADT WAIVED ANY ISSUE ABOUT WHETHER THE
COURT SHOULD REVERSE AND ENTER
JUDGMENT IN ADT'S FAVOR ..........................................43

CONCLUSION....................................................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# <u>TABLE OF CITATIONS</u>

Cases

*Bhogiata v. Altamonte Heights Condo. Ass'n, Inc.,*
  765 F. 3d 1277 (11th Cir. 2014) ........................................................................15

*Booth v. Pasco County, Fla.,*
  757 F. 3d 1198 (11th Cir. 2014) ................................................ 15, 22, 25, 32, 42

*CAE, Inc. v. Clean Air Engineering, Inc.,*
  267 F. 3d 660 (7th Cir. 2001) ...........................................................................35

*Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,*
  605 F. 3d 931 (11th Cir. 2010) ..........................................................................38

*Conroy v. Abraham Chevrolet-Tampa, Inc.,*
  375 F.3d 1228 (11th Cir. 2004) ........................................................................25

*Dere v. Institute for Scientific Information, Inc.,*
  420 F. 2d 1068 (CCPA 1970) ...........................................................................35

*DVD Licensing Corp. v. Body Action Design,*
  846 F. 2d 727 (Fed. Cir. 1988)..........................................................................36

*Gehring v. Case Corporation,*
  43 F. 3d 340 (7th Cir. 1994) ...................................................................... 37, 38

*Goulah v. Ford Motor Co.,*
  118 F. 3d 1478 (11th Cir. 1997) ................................................ 15, 22, 23, 25, 42

*Hi Ltd. Partnership v. Winghouse of Florida, Inc.,*
  451 F. 3d 1300 (11th Cir. 2006) ........................................................................46

*Jaffe v. Bank of America,*
  2010 WL 3449139 (11th Cir. 2010) ..................................................................30

*Johnson v. Guerrieri Management, Inc.,*
  437 F. App'x 853 (11th Cir. 2011) ....................................................................46

*Kanida v. Gulf Coast Medical Personnel LP,*
  363 F.3d 568 (5th Cir. 2004) ............................................................................25

*McCormick v. Aderholt,*
 293 F. 3d 1254 (11th Cir. 2002) .........................................................................15

*Moore v. Robertson Fire Protection District,*
 249 F. 3d 786 (8th Cir. 2001) .............................................................................25

*Morro v. City of Birmingham,*
 117 F. 3d 508 (11th Cir. 1997) ...........................................................................30

*NEC Electronics, Inc. v. New England Circuit Sales, Inc.,*
 722 F. Supp. 861 (D. Mass. 1989) ......................................................................37

*North American Med. Corp. v. Axiom Worldwide, Inc.,*
 522 F. 3d 1211 (11th Cir. 2008) .................................................................. 28, 29

*Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.,*
 741 F. Supp. 1546 (S.D. Fla. 1990) ....................................................................29

*Olmstead v. Taco Bell Corp.,*
 141 F. 3d 1457 (11th Cir. 1998) .........................................................................30

*Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC,*
 684 F. 3d 1211 (11th Cir. 2012) .........................................................................27

*Roberts & Schaefer Co. v. Hardaway Co.,*
 152 F. 3d 1283 (11th Cir. 1998) .................................................... 15, 16, 21, 33

*Schultz Container Systems, Inc. v. Mauser Corp.,*
 2012 WL 1073153 (N.D. Ga. 2012) ...................................................................29

*Suntree Technologies, Inc. v. EcoSense Int'l, Inc.,*
 802 F. Supp. 2d 1273 (M.D. Fla. 2011)...............................................................29

*Suntree Technologies, Inc. v. EcoSense Int'l, Inc.,*
 693 F. Supp. 3d 1338 (11th Cir. 2012) ....................................................... 23, 26

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.,*
 ___ U.S. __, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006)......................... 44, 45, 46

*Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC,*
 511 F. Supp. 2d 1303 (S.D. Fla. 2007) ...............................................................29

*Watkins v. City of Mongomery, Ala.,*
    775 F. 3d 1280 (11th Cir. 2014) ................................................................. 27, 39


Rules

Federal Rule of Civil Procedure 50(a) ....................................................... 43, 44, 45

Federal Rule of Civil Procedure 50(b) ....................................................... 3, passim

Federal Rule of Civil Procedure 51(c) ......................................................... 40

Federal Rule of Civil Procedure 59 ............................................................. 44

# **PREFACE**

Defendants/Appellees, Alarm Protection Technology of Florida, LLC and Alarm Protection Technology, LLC, shall usually be referred to collectively as "Alarm Protection," particularly in discussions about factual matters. In discussions about legal issues, "Alarm Protection" shall typically be used to designate all Defendants.

Appellant/Plaintiff, ADT, LLC, shall be referred to as "ADT."

All other persons, entities and documents shall be referred to as set forth in the Brief.

Citations to the Record on Appeal shall be in accordance with 11th Cir. R. 28-5.

## STATEMENT OF THE CASE

ADT seeks review of an adverse jury verdict on its claim against Alarm Protection for trademark infringement under the Lanham Act. ADT is an extremely well-known and universal name in the monitored alarm system business, having sold and monitored such systems for 140 years. Alarm Protection is one of ADT's competitors. ADT claims that Alarm Protection Technology caused a likelihood of confusion as to Alarm Protection's affiliation with ADT because its acronym, APT, was exposed to ADT customers in sales calls made by Alarm Protection. However, as the record shows, ADT had its day in court. ADT requested a jury trial. A jury of people – much like those who are customers of both ADT and Alarm Protection – after hearing every argument ADT chose to make, determined that there was not a likelihood of confusion between the two companies based upon Alarm Protection's use of its trademark. In fact, in finding that there was no likelihood confusion at *all*, the jury found that there was neither a likelihood of initial interest confusion nor a likelihood of confusion at the time of purchase, both of which questions were also posed to the jury.

In a case in which the jury system is ideally suited to resolve the main issues raised by ADT, and in which the district court permitted ADT to argue every legal theory that it sought to argue, including initial interest confusion, ADT is simply not satisfied that the jurors did not agree with it.

1

While this Circuit has not found initial interest confusion to be a valid independent basis for liability, even if the concept were recognized in the Circuit, ADT was not harmed by the district court's handling of the issue in this case. In fact, the district court explained the concept of initial interest confusion to the jury, put a special interrogatory on the verdict form for the jury to answer in the event that it found any likelihood of confusion at any point in the sales visits by Alarm Protection, and allowed both parties to fully explore and argue initial interest confusion with the jury—a privilege of which ADT took substantial advantage. The jury simply concluded that ADT did not prove its case.

On the second issue raised by ADT, there is no valid basis to require a specific instruction on how the jury might view acronyms or combinations of letters. The district court was within its discretion to rule that the point ADT sought to make with such an instruction was purely, and properly, argument to the jury. It is not appropriate to spoonfeed to the jury, by way of an instruction, a required thought process on a fact issue based upon one party's view of the case.

On the third issue, the refused additional instruction relating to Adam Schanz individual liability, the question is completely mooted by the absence of a finding of any liability under the Lanham Act. Secondarily, the instructions given adequately provided for consideration of individual liability had the jury found a violation.

2

Finally, ADT, challenging the sufficiency of the evidence, asks for the extreme relief of findings by this Court that the only verdict that the record would permit a "fair-minded" jury to reach is one in ADT's favor, and that judgment should be entered in ADT's favor. While even a cursory review of the record shows that there was easily sufficient evidence upon which the jury could properly base the verdict in this case, this is not a matter that the Court may consider because ADT waived this issue by not making a motion for judgment as a matter of law under Fed. R. Civ. P. (50)(b).

### A.    Course of Proceedings

ADT began this action by filing its Complaint in August, 2012. (DE 1)  The Complaint pled claims for deceptive trade practices under Section 43(a) of the Lanham Act and a related claim under the Florida Deceptive and Unfair Trade Practices Act, based upon sales pitches to some of its customers by its competitor, Alarm Protection. (DE 1) In December, 2012, the district court granted ADT's Motion for Preliminary Injunction, barring Alarm Protection from making certain types of statements in sales pitches in their door-to-door sales of alarm systems. (*See* DE 6, 64) ADT amended the Complaint to add a separate claim for trademark infringement under the Lanham Act. (DE 70) Thereafter, ADT sought and obtained a preliminary injunction preventing Alarm Protection from using its acronym "APT" and simultaneously requiring ADT to post a $100,000 bond to protect

Alarm Protection with respect to the injunction. (DE116) Later, ADT filed the operative complaint at the time of trial, the Second Amended Complaint, which expanded the defendants to include other Alarm Protection-related entities. (DE 151)

The Second Amended Complaint alleged that the "ADT" trademark is a "key identifier" for ADT, that ADT has continuously used national print and broadcast media advertising campaigns featuring the ADT trademark for at least 80 years, and that its name is on yard and wall signs across the country and in prominent locations on customer premises, "making the ADT trademark a common sight in many communities." (DE 151, p. 20) ADT further asserted that the ADT trademark is "recognized and known by general consumers and would-be criminals alike throughout United States as the trademark of the nation's leading provider of security services." (*Id.*)

Before trial, ADT sought an order in limine based upon what it called the "initial interest confusion doctrine", asking the district court to disallow Alarm Protection from introducing evidence about their efforts during the sales visit, after initially meeting the prospective customers, to prevent any confusion about the identity of its company. (DE 413) The district court recognized that initial interest confusion is not separately actionable in this Circuit and denied the motion. (DE 478) Based upon that, the district court also later denied ADT's request for a

separate jury instruction on initial interest confusion. (DE 510 at 40-44; DE 551, pp. 51, 79-80)

However, even though the doctrine of initial interest confusion has not been recognized in this Circuit, the district court indulged ADT by, without objection, explaining to the jury what initial interest confusion is, and by approving the verdict form that separately asked the jury whether Alarm Protection's use of its trademark created a likelihood of initial interest confusion. (DE 552, p. 108: 17-23; DE 524) The verdict form was acceptable to both parties and included the same logical scheme of interrogatories to the jury as the verdict form proposed by ADT. (DE 514) The district court further indulged ADT by permitting ADT to adduce evidence and fully argue the theory as a separate basis for liability. (See e.g. DE 549; pp. 136:18-139:19; 140:7-24, 144:11-145:16, 147:10-13, 172:2-174:21; DE 550, 67:14-21; DE 563, pp. 14:24-21:12; DE 552, pp. 31:15-32:2)

Separate verdict forms were used for Count I, trademark infringement, and Count II, deceptive trade practices.[1]   (DE 524; DE 525)   The jury rendered its

---

[1] The arguments raised by ADT relate to the trial court's decisions not to instruct the jury on initial interest confusion and on the increased probability of confusion based on the type of letter arrangements involved in the trademark. Both of those issues relate to trademark infringement, which is Count I of the Second Amended Complaint. None of ADT's arguments would impact Count II, unfair competition based upon false and misleading representations.  Therefore, although ADT's brief does not point it out, ADT has made no arguments that would go to a possible reversal of Count II and, in any event, the jury's verdict on Count II must be affirmed.

verdict in favor of Alarm Protection on February 24, 2015, finding that Alarm

Protection did not cause a likelihood of confusion with ADT's mark, either by use

of Alarm Protection's trademark or by making false or misleading

misrepresentations of fact. (DE 524; DE 525)

The District Court entered a judgment on the verdict on February 25, 2015.

(DE 520) ADT did not file a motion for judgment as a matter of law or for a new

trial under Federal Rule of Civil Procedure 50(b).

ADT served its Notice of Appeal on March 19, 2015. (DE 530)

After entry of judgment, Alarm Protection sought to recover on the

injunction bond posted earlier by ADT. (DE 531)  Over ADT's objection, the

district court ordered payment on the bond. (DE 546)   ADT posted a supersedeas

bond and appealed the district court's ruling on the injunction bond. (DE 559; DE

556)  This Court later consolidated the two appeals for all purposes.

### B.    Statement of the Facts

As ADT has asserted in this litigation, the "ADT" mark is extremely well-

known. ADT invests funds to make sure that "ADT" remains a "key identifier" of

ADT's security systems, equipment and services. (DE 151, p. 20; DE 549, p. 66:5-

17)  ADT's trademark is a common sight in many communities and is recognized

and "known by general consumers and would-be criminals alike throughout the

United States as the trademark of the nation's leading provider of security services." (DE 151, p. 20; DE 549, pp. 64:18-65:14)

Adam Schanz has worked in door-to-door alarm system sales for approximately 11 years. (DE 549, p. 98) Alarm Protection Technology was formed in Utah in 2008. (DE 549, p. 103) From the trial testimony, the jury learned that Alarm Protection's sales method was door-to-door. (DE 549, p. 136:18-25) There was testimony that Alarm Protection sales representatives introduced themselves at the door as being with "Alarm Protection Technology", not "APT." (DE 549, pp. 133:22-134:14, 138:7-139:19; 140:21-24; 145:10-16; 153:12-18; 244:22 – 245:4; DE 562, pp. 229:1-10, 268:9-18; DE 563, pp. 23:14-25, 32:10-24) The representatives also wore shirts, hats, badges and lanyards that had the "Alarm Protection Technology" name, as well as the full composite logo, on them. (DE 549, p. 138:6-12; DE 562, p. 225:3-24; DE 549, pp. 238-244, Trial Ex. D-664, D-663, D-816A, D-816B, D-661A and D-661B) The badges contained sales representative state license information and were typically handed to the homeowner once the door was opened. (DE 562, pp. 225:10-14, 229:11-23; DE 549, p. 138:13-18; Trial Ex. D-664) The sales presentation generally lasted between 30 and 60 minutes (DE 549, pp. 224:22-245:7; DE 562, p. 231:12-13; Trial Ex. D-664) and involved the review and execution of multiple documents, as well as a telephone call. Customers reviewed and signed a contract and a schedule

of protection, both of which had the full name of the company across the top of the agreement. (DE 549, pp. 268:12-269:6; DE 562, pp. 240:21-241:6; see e.g. Trial Ex. D-14, D-16, 33, 34, D-47, D-48, introduced at DE 550, pp. 157-158; DE 549, pp. 268-271; DE 550, pp. 131-133; DE 550, pp. 133-135; DE 550, pp. 79-81; and DE 550, pp. 77-79) Customers also reviewed and signed a General Questionnaire, which included representations such as "I understand that Alarm Protection Technology Florida, LLC is not affiliated, acquiring, merging, taking over, partnered, buying out, a "sister company" of or associated with any other alarm monitoring company in any way, including Previous Provider." (DE 549, p. 256:9-17; DE 506, pp. 240:21-242:20;  See e.g. Trial Ex. D-17, D-35, D-50, introduced at DE 549, pp. 248-255; DE 550, pp. 135-141; and DE 550, pp. 81-86) Finally, customers also participated in a recorded telephone conversation, known as a "pre-install call," in which an Alarm Protection Technology operator confirms orally that the customers understand Alarm Protection Technology is not related to their current alarm company. (DE 562, pp. 242:22-243:15; Trial Ex. D-2, introduced at DE 549, pp. 257-268; D-36 and D-37, introduced at DE 550, pp. 137-141; D-52 and D-51, introduced at DE 550, pp. 86-91; DE 549, pp. 169:10-16, 260:5-268:9)

At trial, witnesses for Alarm Protection testified that they did not use deceptive sales techniques, as alleged by ADT in Count II of its Second Amended Complaint. Specifically, sales representative Jacob Dahl testified that he had never

8

told a perspective customer that he was from ADT and explained that he had no incentive to do so. (DE 562, p. 252:13-21) He further testified that Alarm Protection never instructed him to say anything false or misleading to ADT's customers. (DE 563, p. 92:13-21)[2]

For two of the Defendants, there was no evidence of the use of any mark in commerce. Alarm Protection Technology Management, LLC does not sell alarm systems or monitoring services and never has done so. (DE 550, p. 8:4-8) It does not make any revenue from the sales of products or services and does not market to consumers using the APT acronym. (DE 550, p. 8:13-18) Alarm Protection Technology Holdings, LLC similarly does not sell alarm systems or services or make revenues from the sale of products and services, nor does it market to consumers using the APT acronym. (DE 550, p. 8:9-12, 19-24)

ADT included among its witnesses a handful of its customers. From Alarm Protection's approximately 8,600 sales for the 16 months before the entry of the preliminary injunction below, ADT was able to present just five customer

---

[2] Jacob Dahl further explained why there was no incentive to deceive. He testified that sales representatives are not paid an upfront commission but receive a residual. He testified that he does not receive a profit on an individual customer for a little over a year. (DE 562, p. 245:7-9) When a customer cancels within 3 days, the salesperson is charged $150 and gets no residual. (DE 562, p. 217:13-17) Testifying about how important it is that the salesperson explain everything to the prospective customer clearly upfront, he testified that if the corporate office investigates and finds deception, a salesperson can be fined up to $5,000. (DE 562, pp. 217:1-12; 245:3-9, 17-19)

witnesses in support of its allegations of actual confusion. (DE 550, p. 57:16-25) Some of the five customers had various issues that made communication more difficult, such as a hearing problem or language barrier, but *none* of the customers were lost to ADT because of Alarm Protection. Donald Gartrell, who had significant hearing issues and could not perceive how the salesman aurally identified himself, and his wife, Mona, never bought Alarm Protection's service and simply remained with ADT. (DE 550, pp. 96: 19-24; 103: 24-104:17; 114: 19-115: 11) Nieves Nunes, who spoke little English and testified through an interpreter at her deposition, which was read to the jury at trial, signed a contract with Alarm Protection but cancelled it within the three-day cancellation period and went back to ADT. (DE 550, p. 222:4; DE 221-13, Nunes' Depo at p. 17: 2-25) Robert Wimberly signed a contract with Alarm Protection but cancelled it immediately and returned as a customer to ADT. (DE 550, p. 126: 18-22) Marilyn Hipple signed a contract with Alarm Protection but cancelled it the next day. (DE 550, p. 89: 14-21)   She did not go back to ADT only because her house was selling within a week and ADT advised her that she should wait because of that sale. (DE 550, p. 71: 2-14) Finally, Mary Demps signed a contract with Alarm Protection and then also cancelled. (DE 550, pp. 152: 25-153: 9; DE 550, pp. 166: 24-167: 3) Significantly, the jury heard Mary Demps testify that she is not confused about the difference between the two acronyms, "ADT" and "APT" (DE

550, p. 164: 1-13) Thus, none of the handful of customers that testified on behalf of ADT were lost as customers to ADT because of Alarm Protection's sales efforts or because of confusion between the trademarks. In fact, ADT presented *no testimony* that it has ever ultimately lost a customer to Alarm Protection because of confusion between the trademarks.

Each side presented expert testimony through an expert witness who conducted a survey attempting to determine the likelihood of affiliation confusion between the trademarks. Alarm Protection's expert witness, Dr. Dan Sarel, based his opinions in part on a mall intercept survey conducted on 480 respondents in several different malls nationwide, under conditions substantially similar to the marketplace. (DE 562, pp. 141:18-143:20; 150:6-23; 155:10-11) Respondents to Dr. Sarel's survey were asked to think about a situation in which they were approached at their home by a sales representative of a home security system company and then asked to review the same Brochures and General Questionnaires that real customers are provided when Alarm Protection makes in-the-home presentations. (DE 562, pp. 156: 14-160: 9; 168:16-169:9) In Dr. Sarel's survey, less than 1% -- only 3 out of 320 people – identified the APT offer as being provided by ADT. (DE 562, p. 166: 5-13) Only 15 out of 320, or 4.7%, said that the APT offer was licensed or affiliated with ADT. (DE 562, p. 168: 1-3) Combined with the results for the control "AGT" mark which showed higher

percentages of source and affiliation confusion, this resulted in a finding of a net zero, or no likelihood of affiliation, confusion. (DE 562, pp. 168: 7-15; 169: 18-22) Dr. Sarel testified, "… I've been doing this for many years. I've reviewed hundreds of studies in the literature and in cases that have been accepted in court. This is one of the strongest cases that I have ever seen of no confusion." (DE 562, p. 169: 18-22) Dr. Sarel also testified that it was his opinion if he had showed *all the materials* to the respondents (hat, shirts, yard signs) that are present as part of Alarm Protection's initial sales presentation, rather than just a Brochure and General Questionnaire, it would further strengthen his opinion of no confusion. (DE 506, p. 169: 22-170: 17)

ADT's expert, Dr. Stewart, on the other hand, conducted a survey that did not reflect market place conditions, but was, rather, a simple aural telephone survey conducted only with current ADT customers. (DE 562, pp. 170:18-171:9; 184:6-185:9; DE 550, p. 227:5-12) Although the jury heard Dr. Stewart testify that the closer the survey comes to marketplace conditions, the greater the evidentiary weight it should be given, Dr. Stewart admitted that his telephone survey included nothing to account for the facts that real-life, in-person sales presentations by Alarm Protection involved the wearing of a company shirt, hat, lanyard, and badge, identifying the company as "Alarm Protection Technology." (DE 550, pp. 249:13-16; 251:3-252:3) Dr. Stewart's telephone survey also included nothing to account

for the fact that the same initial presentation by Alarm Protection would include a written contract, the Schedule of Protection, the General Questionnaire, the pre-install call and brochures, all of which would be reviewed visually by the customer as part of that same sales pitch. In fact, Dr. Stewart admitted that, in preparing his opinion, he did not: (a) interview sales people of ADT, Alarm Protection or any other alarm service company; (b) review depositions taken in the lawsuit prior to reaching his opinions in his expert report; (c) review any of Alarm Protection's materials or the shirts, hats and other items worn on the doorsteps; (d) listen to the Pre-Install Calls; or (e) do any independent research on Alarm Protection's home solicitation methods, business or advertising methods. (DE 550, pp. 240: 25-243: 22; 250: 15-21; 251:3-252:3) Dr. Stewart was also aware that Alarm Protection did not do telephone solicitations. (See DE 550, p. 250:22-24)

Dr. Stewart's survey was limited to 150 then-current ADT customers. That choice did not reflect Alarm Protection's entire target market, which includes individuals with no alarm systems at all and those with an alarm system through a company other than ADT. (DE 550, pp. 5:25-7:25; 246:1-12; 246:19-247:24; DE 562, pp. 31: 19-32: 2; 183:25-184:12) The question asked to the respondents was, "Is your security system being monitored by ADT?", which Dr. Stewart admitted is not a question the consumer would ever hear in the marketplace. (DE 550, p. 254: 1-6; 18-23) The telephone calls were not recorded, leaving clarity, phonetic

emphasis and cadence of questioners unable to be examined. (DE 550, pp. 257:4-259:11) No questions were included to screen for hearing, language barriers, or other issues related to whether the respondents qualified as a "reasonable" or "typical" consumer for purposes of the Lanham Act. (DE 550, pp. 255: 22-256: 10, 13-15) Despite these infirmities, Dr. Stewart's survey results showed only an 18% likelihood of confusion as to affiliation. Alarm Protection's expert witness, Dr. Sarel, testified that any results under 20% is problematic and not significant as a clear indicator of likely confusion. (DE 562, p. 168: 1-6)

After closing arguments, the district court properly instructed the jury that it "may use reasoning and common sense to make deductions and reach conclusions," that they should decide whether they "believe what each witness had to say," based upon some suggested common sense inquiries, and that they should decide for themselves "whether to rely upon the opinion" of the expert witnesses who testify. (DE 552, pp. 95:4-97:6)

After hearing the testimony of both experts, the few customers offered, and the representatives of the companies, including testimony about Alarm Protection's sales methods, the jury found both that there was no likelihood of confusion as to Alarm Protection's affiliation with ADT based on the trademarks during the sales visit, either initially at the door or later at the time of purchase, and that Alarm

Protection did not make false or misleading representations of fact that could cause a likelihood of confusion. (DE 524, 525).

### C.    Standard of Review

This court has explained that the review of jury instructions is simultaneously *de novo* and deferential. *See Bhogiata v. Altamonte Heights Condo. Ass'n, Inc.,* 765 F. 3d 1277, 1285 (11th Cir. 2014) "We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party" but give the district court "wide discretion as to the style and wording employed." *Id. See also McCormick v. Aderholt,* 293 F. 3d 1254, 1260 (11th Cir. 2002) ("if the trial judge's instructions accurately reflect the law, he or she is given wide discretion as to the style and wording employed in its instruction"). Under this deferential standard, this Court examines "whether the jury charges, *considered as a whole*, sufficiently instructed the jury so that the jurors understood the issues and were not misled." S*ee Roberts & Schaefer Co. v. Hardaway Co.,* 152 F. 3d 1283, 1295 (11th Cir. 1998)(emphasis added). In addition, "[t]he district court's refusal to give requested instructions is not error if the substance of the proposed instruction was covered by another instruction, which was given." *See Booth v. Pasco County, Fla.,* 757 F. 3d 1198, 1208 (11th Cir. 2014) (quoting *Goulah v. Ford Motor Co.,* 118 F. 3d 1478, 1485 (11th Cir. 1997)). The district court's decision on a jury instruction should not be reversed

unless the Court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *See Roberts & Schaefer Co., supra,* 152 F. 3d at 1295 (internal citation omitted).

## SUMMARY OF ARGUMENT

ADT seeks review of the adverse verdict in this case primarily on the basis of issues it raises regarding the jury instructions. However, the district court committed no error or abuse of discretion with respect to the jury instructions. In fact, ADT received the benefit of the doubt on the primary jury instruction question it raises.

ADT objects that the district court did not give ADT's proposed jury instructions on initial interest confusion, to instruct the jury that liability for trademark infringement under the Lanham Act may be based entirely on a finding of a likelihood of initial interest confusion (as opposed to confusion occurring later in the same interaction between the competitor and ADT's customers). ADT's argument fails for at least two reasons. First, the initial interest confusion doctrine has not been recognized in this Circuit; therefore, ADT's proposed instruction did not represent current law. Second, ADT received the benefit of the doubt from the district court's treatment of this issue, in any event. The district court, while not giving the precise (and defective) instruction that ADT proposed, did instruct the jury to consider whether Alarm Protection's use of its trademark caused a

16

likelihood of initial interest confusion. In fact, the court approved a verdict form –

acceptable to both sides – that put that precise question to the jurors, such that if

the jurors found a likelihood of confusion of any kind, it was directed to determine

whether there was a likelihood of initial interest confusion. In other words, the jury

was fully permitted to find liability and return a damages verdict in favor of ADT

based solely upon initial interest confusion. The district court even explained to the

jury, without objection, what initial interest confusion means and placed no

restrictions on ADT's arguments about such confusion, which ADT took full

advantage of in its examination of its witnesses, expert's presentation and closing

argument. The jury, a body ideally suited for determination of the issues raised by

a case like this one, simply did not agree with ADT that there was a likelihood of

confusion between the trademarks. Whether it was because the ADT mark is so

well-known – as ADT asserted in this case – or because of the specifics of Alarm

Protection's presentation to customers, or simply because the jury found ADT's

fact and expert witnesses not to be credible, does not matter. The question raised

was entirely within the province of the jury, the district court instructed the jury

properly within its discretion – indulging ADT on the initial interest confusion

issue far beyond what it had to under current law – and no reversible error was

committed.

The second error alleged by ADT is the district court's refusal to instruct the jury that there is special protection for trademarks consisting of word and letter combinations. ADT, in effect, wanted the jury to be instructed that it is especially difficult to remember a series of arbitrary letters (presumably, such as "ADT"), such that it would be easier for a customer to confuse a competitor's similar acronym. The district court acted within its discretion, properly concluding that such an instruction is properly a matter of argument to the jury. By giving ADT's proposed instruction, the court would have been restricting how the jury applies its common sense and reasoning to the confusion issue, rather than evaluating the two trademarks in the way that persons in the marketplace would, apprised of what people commonly know about ADT, the observable differences and similarities between the trademarks, and all features of Alarm Protection's sales presentation to customers. Indeed, juries are normally instructed to apply their own common sense and reasoning to the factual issues raised, and they were so instructed in this case. As a matter of fairness, in opposing the jury instruction offered by ADT, Alarm Protection offered an instruction that would advise the jury that the more well-known a company's mark, the less chance of confusion – a common sense principle, also. The district court refused that extra instruction, also, because it regarded that to also be a matter of argument to the jury. ADT was not entitled to instructions spoonfeeding the jury ADT's desired analysis of the facts, depriving

18

the jury of the opportunity to decide the key fact issues for itself. ADT does not argue – and cannot argue – that it was restricted in any way from arguing to the jury that it should look at these facts in the way that ADT wanted them to. The trial court, pointing out that not every statement made by an appellate court is worthy of being a jury instruction, properly acted within its discretion, and no error was committed.

The third issue raised by ADT was whether the district court erred in refusing to instruct the jury as to Adam Schanz's individual liability. Adam Schanz is the key principal in all of the Alarm Protection Technology entities. The district court did not err with respect to ADT's request on multiple grounds. First, because the jury found no violation of the Lanham Act, it could not have found liability of an individual within the corporate defendants. Second, even if there had been a finding of liability on the part of a corporate defendant, the substance of the requested instruction was covered by other instructions given to the jury. Therefore, even if error occurred, it was harmless error. The district court did not err in refusing to give additional instructions relating to Adam Schanz's individual liability.

Finally, ADT asks for the extreme relief of reversal and entry of judgment in its favor, arguing that no properly instructed and "fair-minded jury" could return a verdict for Alarm Protection. ADT is contesting the sufficiency of the evidence to

support the verdict. However, it may not do so at this point in the case because of waiver. In order to contest the sufficiency of the evidence to support the verdict, either to seek a judgment as a matter of law or a new trial, ADT was required to file a Rule 50(b) motion seeking that relief in the trial court after the return of the verdict. ADT did not do so, and has waived this argument. While Alarm Protection submits that there was ample evidence in the record to support the jury's verdict in any event, this issue is entirely resolved by ADT's failure to file a Rule 50(b) motion and the consequent waiver.

## ARGUMENT

## I.    THE DISTRICT COURT DID NOT ERR BY REFUSING TO GIVE A JURY INSTRUCTION ON INITIAL INTEREST CONFUSION

As ADT acknowledges, there is no initial interest confusion doctrine in the Eleventh Circuit. (Initial Brief at 4, 15) Regardless, even if the initial interest confusion doctrine existed in the Eleventh Circuit, or if this Court decided to recognize the doctrine as an independent basis for a claim, the district court did not err – and, in fact, adequately accounted for the hypothetical application of that doctrine – in its instructions to the jury. First, the district court instructed the jury to consider whether Alarm Protection's use of its trademark caused a likelihood of "confusion," encompassing both initial interest confusion and other types of confusion. Second, the district court permitted both parties to address initial interest confusion and explain it to the jury as one type of confusion that may have

occurred and for which Alarm Protection should be liable, which ADT's counsel did. Third, the district court permitted a question on the verdict form that specifically inquired of the jurors whether Defendants' use of its trademark "caused a likelihood of initial interest confusion…" and then, in presenting it, explained to the jury what initial interest confusion is. Finally, the jury answered the question about the likelihood of confusion, saying, "no," there was no likelihood of confusion of *any kind* (including initial interest confusion). Not only did ADT receive the benefit of the jury being instructed on initial interest confusion and specifically asked about it, the jury expressly found no confusion, such that ADT's request for an instruction was satisfied or, alternatively, the rejection of its specific initial interest confusion instruction was not harmful. Thus, because the instructions given to the jury did not misstate the law or mislead the jury, and because the trial judge has wide discretion as to the style and wording employed in the court's instructions to the jury, there was no substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations. *See Roberts & Schaefer Co., supra,* 152 F. 3d at 1295.

### A.    The District Court Did Instruct the Jury on Initial Interest Confusion

ADT's argument that the district court did not provide any instruction to the jury regarding initial interest confusion overlooks the unobjected to verdict form and the district court's unobjected to instructions to the jury relating to the verdict

form. Specifically, the verdict form for ADT's trademark infringement claim asked the jury to decide, first, whether:

> The defendant's use of its trademark caused a likelihood of confusion as to the defendant's affiliation with ADT?

and, second, if the jury answered "yes" to the first question, whether:

> The defendant's use of its trademark caused a likelihood of *initial interest confusion* as to the defendant's affiliation with ADT?

and whether:

> The defendant's use of the trademark cause[d] a likelihood of confusion at the time of purchase as to the defendant's affiliation with ADT?

(DE 524)[3] (emphasis added)

So the jury was specifically required to determine whether, if there was any confusion at all, it was initial interest confusion. To ensure that the jury understood this question, the district court instructed the jury, when explaining the verdict form for Count I, that "[i]nitial interest confusion is another word for saying initially at the door, not necessarily later on the sale."  (DE 552, p. 108:20-23) This Court has held that "[t]he district court's refusal to give requested instructions is not error if the substance of the proposed instruction was covered by another instruction, which was given." *Booth, supra,* 757 F. 3d at 1208 (quoting *Goulah v.*

---

[3] ADT did not challenge the sufficiency of the verdict form at trial or on appeal and, in fact, proposed a verdict form that used the same interrogatory progression, in substantially similar words. (DE 514)

*Ford Motor Co.,* 118 F.3d 1478, 1485 (11th Cir.1997)). Here, the jury *was* sufficiently instructed on the meaning of initial interest confusion and *was* asked to reach a verdict specifically on whether or not ADT had proven initial interest confusion, if it found any likelihood of confusion at all. ADT ignores both this instruction and the Verdict Form in its brief, even though they are dispositive of ADT's appeal on this issue.

### B.    This Court Need Not Reach the Question of Whether Initial Interest Confusion Is Actionable In The Eleventh Circuit Because the Jury Found No Confusion of Any Type

In its ruling in *Suntree,* the Eleventh Circuit declined to address whether initial interest confusion is actionable in this Circuit, finding that "[b]ecause *Suntree* failed to present evidence of an intent to mislead or confuse, or of actual confusion, we need not reach the question whether initial interest confusion is actionable in the Eleventh Circuit." *Suntree Technologies, Inc. v. EcoSense Int'l, Inc.,* 693 F. 3d 1338, 1347 (11th Cir. 2012).

Here, ADT faces a similar hurdle, since the jury found no confusion of any type even though, from the jury's perspective, initial interest confusion was an issue at trial. (DE 524) ADT referred to the initial "knock knock" by Alarm Protection's sales representatives on the door throughout its opening statement. (DE 549, pp. 63:16-64:2, 72:20-73:4) ADT presented evidence through both fact and expert witnesses regarding its initial interest confusion theory, including

questions about the importance of "getting in the door" and the process followed by Alarm Protection's sales representatives at the door. (See e.g. DE 549, pp. 136:18-140:24, 144:11-147:13, 172:2-174:21; DE 550, pp. 67:14-21, 233:17-234:18; DE 563, pp. 14:24-21:12; DE 562, p. 56:2-23)

In closing, ADT argued "you have to gain the trust of the customer first, and you do that by knocking (knocking) on the door" and "[s]o all these folks want is to get in the door, because once they're in your house, you're theirs." (DE 552, p. 32:1-2); (see also DE 552, pp. 31:15-21; 31:22-25) ("If you don't get in the door, there is no sale."). ADT also spoke at length during closing argument about testimony by ADT's expert witness relating to the "foot in the door" theory and argued that even if the customer likes the equipment, "that doesn't make the sale okay, because they got there the wrong way." (DE 552, pp. 32:9-33:2, 33:17-34:5; 86:2-22, 88:12-19, 89:21-25) Finally, at the conclusion of trial, without objection from ADT, the district court instructed the jury on the meaning of "initial interest confusion" (albeit not in the precise form of instruction that ADT proposed) and included the issue on the verdict form. (DE 552, p. 108:6-23; DE 524)

ADT has not argued in its appeal that the District Court improperly excluded any evidence or argument regarding its initial interest confusion theory and, in fact, acknowledges the opposite. (Initial Brief, p. 16) ADT was permitted to present its entire case on initial interest confusion and the jury decided the issue against ADT.

This Court has previously held that there was no prejudicial harm from the failure to give an instruction, where "[a]s an alternative to giving the instruction, the district court permitted Plaintiffs to make the same point during closing argument. While this solution was unorthodox, it mitigated any prejudice that may have otherwise resulted." *Booth*, *supra,* 757 F.3d at 1209; *see also Conroy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1235 (11th Cir. 2004) ("We also find it significant that Conroy's counsel made good use of his opportunity to argue pretext to the jury in closing statements"); *Cf. Kanida v. Gulf Coast Medical Personnel LP,* 363 F.3d 568, 579 (5th Cir. 2004) (finding that because the jury instructions properly stated the law and because the plaintiff was given the opportunity during closing statements to argue that the evidence showed pretext, the failure to give the requested pretext instruction was not reversible error); *Moore v. Robertson Fire Protection District,* 249 F. 3d 786, 790–91 (8th Cir. 2001) (finding no error in the court's refusal to give a pretext instruction, where the plaintiff was permitted to argue pretext, the court stated, "if the jury had accepted *Moore's* pretext argument it would have been required to find in its favor under the instructions provided by the district court")

Despite ADT's presentation and arguments, the jury found not only that ADT failed to prove initial interest confusion, but that ADT failed to prove any likelihood of confusion to support its trademark claim. *See Goulah, supra*, 118 F.

3d at 1486 (because jury found no liability at all, it never had to reach the comparative negligence issue, such that it was not error for the court to refuse a comparative negligence instruction). Viewed another way, the district court's decision not to give ADT's requested jury instruction was harmless because the jury was permitted to, and asked to, consider initial interest confusion and decided that there was none. Based upon how the trial was conducted by ADT and the instructions handled by the district court, ADT's argument implicitly boils down to the proposition that if the court had instructed the jury in even more detail that it could find a likelihood of confusion based upon a likelihood of initial interest confusion, the jury would then have found that there was some confusion. That position is beyond speculative; it's illogical. The jury was instructed in a way that gave ADT a clear path to the result it wanted had the jury agreed with ADT's case. Therefore, even if this Court were to accept ADT's invitation to rule that initial interest confusion is actionable for a Lanham Act claim, based on these facts, such a ruling would not support setting aside the jury verdict or granting a new trial. As in *Suntree*, this is not a case that calls for the Court to adopt a doctrine not previously accepted by courts in this circuit.

### C.    The District Court Did Not Abuse Its Discretion In Refusing To Give The Proposed Initial Interest Confusion Instruction

Viewing the issue raised from the additional perspective of the applicable three-part test, ADT cannot show an abuse of discretion by the district court in

declining to give ADT's proposed jury instruction. As set forth in *Watkins v. City of Montgomery, Ala.,* 775 F. 3d 1280,1291 (11th Cir. 2014), a district court abuses its discretion by refusing to give a requested instruction "only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party. *See also Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC,* 684 F. 3d 1211, 1224 (11th Cir. 2012). Here, as explained above, the district court did instruct the jury on the meaning of "initial interest confusion". Moreover, contrary to ADT's argument, the Pattern Jury Instruction does not contradict the initial interest confusion argument. Rather, the instruction to consider the use of the trademark "viewed in its entirety" is an accurate reflection of the law, which must be applied to each stage of the transaction, including any initial interaction of the sort complained about by ADT here. For instance, the "initial" impression of the customer would not necessarily be just the alleged oral use of the "APT" mark (which was never proved at trial to have occurred on any doorstep), but also the immediately visible shirts, hats, badges, and other identifying materials worn or carried by Alarm Protection's sales representatives on these door-to-door sales calls. ADT's argument that the jury should not consider the initial contact "in its entirety" advocates artificially preventing the jury from considering real life circumstances.

(1)    Element 1: ADT's Proposed Instruction Is Not An Accurate Statement Of The Law In The Eleventh Circuit

ADT's proposed jury instruction on initial interest confusion does not accurately reflect the law in the Eleventh Circuit.[4] No court in the Eleventh Circuit has recognized initial interest confusion as actionable under the Lanham Act. In fact, the Eleventh Circuit rejected the initial interest confusion theory, at least where any confusion was remedied prior to the sale, in dicta in *North American Med. Corp. v. Axiom Worldwide, Inc.,* 522 F. 3d 1211, 1224 n.10 (11th Cir. 2008), stating that if "it will be clear to the consumer that there is no relationship between the defendant and the competitor beyond the competitive relationship" prior to a sale, that militates against causing the type of confusion that would be actionable under the Lanham Act.

All district courts within the Eleventh Circuit that have addressed initial interest confusion under the Lanham Act have likewise rejected it. Southern District of Florida Judge Donald Middlebrooks held that:

> Plaintiff directs me to several cases that have held that "initial interest confusion," such as that present with

---

[4]  ADT's argument for this Circuit recognizing initial interest confusion as independently actionable under the Lanham Act is based upon cases from other circuits. (See Initial Brief at 24-26) One significant trait that characterizes all of the cases relied upon by ADT is that none of them involve events taking place in a single sales visit, as they do in the present case, where any initial impression may be immediately thereafter eradicated.  (Id.) In fact, no known federal court case has ever found liability based upon initial interest confusion where the initial contact and sale took place in the same visit by a salesperson.

28

> Hanson and Bukovic, is sufficient to find a likelihood
> of confusion . . . The Eleventh Circuit has not embraced
> this principle, and I find it unpersuasive. When the
> bottom line is sales of a particular product, initial
> confusion prior to and concluding before the point of
> purchase does not seem dispositive in a likelihood of
> confusion analysis.

*Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC,* 511 F.
Supp. 2d 1303, 1318 (S.D. Fla. 2007) (citations omitted). Similarly, Judge John
Antoon II of the Middle District of Florida, referencing this Court's decision in
*North American Med. Corp*., as well as the Southern District's position in *Vital
Pharm*., held that "[i]n sum, *Suntree* alleges initial interest confusion, which is not
actionable confusion in the Eleventh Circuit." *Suntree Technologies, Inc. v.
EcoSense Int'l, Inc.,* 802 F. Supp. 2d 1273, 1283 (M.D. Fla. 2011).

Finally, the Northern District of Georgia recently held that a sticker placed
on a product that disclaimed affiliation with the plaintiff precluded any reasonable
consumer from claiming confusion as to the source of the product. *Schultz
Container Systems, Inc. v. Mauser Corp.,* 2012 WL 1073153 (N.D. Ga. 2012). The
recognition of the curative role of disclaimers by the *Schultz Container* court is
consistent with the rejection of the initial interest confusion theory. *See also Ocean
Bio-Chem, Inc. v. Turner Network Television, Inc.,* 741 F. Supp. 1546, 1558 (S.D.
Fla. 1990) (holding that disclaimers included during a movie stating that the movie
was not portraying any one company and specifically not plaintiff's company,

evidenced a lack of intent to infringe).

Based upon this Court's own reasoning and the above cases, if this Court decides to address initial interest confusion, the Court should rule that it continues to not be actionable under the Lanham Act or, in the alternative, that it does not apply to the facts of this case.

(2)    Element 2: The issue is not before the jury

The jury instruction requested by ADT contains an entire section on post-sale confusion, which was not alleged by ADT, and of which there was no evidence at trial. (See DE 510, p. 40, ADT's alternative proposed jury instruction number 24) ("a defendant may also violate the law by using a trademark that confuses the public after the sale is completed, even if the buyer is not confused…") There is no reference to post-sale confusion in the Second Amended Complaint, and it was not preserved in the Joint Pretrial Stipulation, so it is waived. (DE 378) *Jaffe v. Bank of America,* 2010 WL 3449139 (11th Cir. 2010); *Olmstead v. Taco Bell Corp.,* 141 F. 3d 1457 (11th Cir. 1998); *Morro v. City of Birmingham,* 117 F. 3d 508 (11th Cir. 1997). Therefore, to the extent that the proposed jury instruction addresses post-sale confusion, it is not an issue that was before the jury, and ADT's proposed jury instruction is defective for purposes of this case.

(3)    Element 3: There is no prejudice

The Pattern Instructions given by the District Court on Count I did not place any limitation on the timing of the confusion. Rather, the Pattern Instructions state, "That is, you must decide if Defendants, without ADT's consent, used the same or similar trademark in connection with the sale or the offer to sell goods in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval or sponsorship of the goods." (DE 552, p. 99:4-9; see also DE 552, p. 100:2-6 (instructing the jury that ADT must prove that Defendants "used the trademark in a manner that is likely to: A, cause confusion, mistake or deception as to B, the source, origin, affiliation, approval or sponsorship of Defendants' goods"). The Pattern Instructions further directed the jury to weigh "the amounts and duration of confusion." (DE 552, p. 102:24-25) Thus, the instructions were broad enough to allow the jury to consider confusion at any stage of the sale, or the offer to sell, including the initial contact between Alarm Protection representatives and the customers. Moreover, the verdict form directed the jurors to address initial interest confusion if it found any confusion, and the judge subsequently instructed the jury, when explaining the verdict form for Count I, that "[i]nitial interest confusion is another word for saying initially at the door, not necessarily later on the sale." (DE 552, p. 108:17-23)

Even if this Court now ruled for the first time that initial interest confusion is actionable under the Lanham Act in the Eleventh Circuit, the failure to give the

instruction precisely as ADT requested did not prejudice ADT. ADT was given free reign by the district court to argue initial interest confusion in its closing statement and has not argued that it was denied the opportunity to present evidence at trial regarding any allegations of "initial" confusion. In an analogous case, the Eleventh Circuit held that "[p]laintiffs have failed to persuade us, however, that they suffered prejudicial harm. As an alternative to giving the instruction, the district court permitted Plaintiffs to make the same point during closing argument. While this solution was unorthodox, it mitigated any prejudice that may have otherwise resulted." *Booth, supra,* 757 F. 3d at 1209. The same is true here, particularly where the district court did give instruction, just not the one ADT wanted.

The record is replete with examples of ADT referencing their initial interest theory throughout the trial, some of which are referenced at p. 5 above, and ADT has not argued that the Court erred in excluding any evidence or argument on this topic. In closing argument, ADT emphasized the different steps of the sales process and that "you have to gain the trust of the customer first, and you do that by knocking (knocking) on the door."  (DE 552, p. 31:15-21) "If you don't get in the door, there is no sale."  (DE 552, p. 31:22-25) "So all these folks want is to get in the door, because once they're in your house, you're theirs." (DE 552, p. 32:1-2) ADT's counsel talked at length about testimony by ADT's expert witness relating

to the "foot in the door" theory and argued that even if the customer likes the equipment, "that doesn't make the sale okay, because they got there the wrong way." (DE 552, pp. 32:9-33:2, 33:17-34:5; 86:2-22, 88:12-19, 89:21-25)

Therefore, viewing this jury instruction issue from the perspective of the three elements required to exist before abuse of discretion may be found in the refusal to give a specific jury instruction, ADT cannot meet those elements. Most prominently, as explained in detail above, it cannot show prejudicial harm because the district court did instruct the jury on initial interest confusion, permitted the theory to be argued without limitation, and specifically allowed the jury to find liability based solely upon the likelihood of initial interest confusion, if it found any confusion at all. The jury simply found that ADT did not prove its case. Having had its day in court, ADT is looking for a way to retry the case before this Court, arguing the evidence that it believes favors its position. No such remedy exists in our legal system. Based upon that, the district court did not abuse its discretion to select the style and wording with which it instructs the jury, and it cannot reasonably be shown that there is a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations. *See Roberts & Schaefer Co., supra,* 152 F. 3d at 1295.

## II. THE DISTRICT COURT DID NOT ERR BY REFUSING TO INSTRUCT THE JURY ABOUT PROTECTIONS FOR TRADEMARKS CONSISTING OF WORD AND LETTER COMBINATIONS

ADT sought to have the court instruct the jury about how it should view the trademarks at issue in this case, consisting of acronym or letter combinations. Pulling from various cases certain phrases opining about what types of letter arrangements one might find more difficult to distinguish, ADT argues that the district court abused its discretion by failing to instruct the jury, in essence, that trademarks made up of letters or acronyms are "more difficult to remember than some other trademarks." The district court, noting that it is incorrect to assume that everything an appellate court says is proper for a jury instruction, ruled that the point ADT sought to make is a proper subject of argument, a matter on which ADT was free to attempt to persuade the jury, but that it was within the province of the jury to decide whether the acronyms at issue here were more difficult to distinguish than other acronyms or other types of trademarks. The district court was right. If the jury could not be persuaded on this point by ADT, it is because the jury did not agree. Nothing in the law required it to agree. The instruction ADT sought was not really in the nature of a statement of law but more in the nature of guidance intended to lead the jury to the result that ADT desired. That is not the proper substance of a jury instruction. The instruction proposed by ADT is as follows:

34

> In addition, you should understand that the law provides expanded protection for trademarks made up of acronyms or letter combinations, because *it is more difficult to remember a series of arbitrary letters*. The law also provides that, if you find two trademarks made up of similar letter combinations to be confusing, the addition of the company's full name to the letter combination *does not dispel* the confusion.

(DE 510, p. 30, Plaintiff's proposed jury instruction no. 22) (emphasis added). In support, ADT relies upon various cases that include within their text the observation that it is more difficult to remember a series of arbitrarily arranged letters than it is to remember figures, syllables, or phrases and that, therefore, it is easier to become confused between similar such marks. *See, e.g., CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F. 3d 660, 684-85 (7th Cir. 2001) (stating the "principle" that confusion is more likely between "arbitrarily arranged letters" than other categories of marks); *Dere v. Institute for Scientific Information, Inc.,* 420 F. 2d 1068, 1069 (CCPA 1970) ("it is more difficult to remember a series of arbitrarily arranged letters than it is to remember figures, syllables, or phrases…") (emphasis added).

Alarm Protection objected to the proposed jury instruction on multiple grounds. The proposed instruction was not part of the Pattern Instruction, and for good reason. The instruction proposed by ADT seeks to instruct the jury on a fact issue in a way that spoonfeeds the jury toward ADT's view of the record, attempting to lead them in the direction ADT would like them to go—essentially,

35

making the fact issue to be decided by the jury into a legal issue, leaving them no real choice. That is undoubtedly a proper subject for argument – such as closing argument – but it is not a proper use of a jury instruction. The ultimate question for the jury in this case is whether there was a likelihood of confusion based upon ADT's trademark and Alarm Protection's presentations with respect to its company. Not only is this type of instruction inappropriate – or plainly within the discretion of the district court to refuse – but ADT's version goes too far. First, the idea that there is "expanded protection," is not expressly supported by the cases that it cites. In addition, the second sentence, suggesting that if two trademarks are made of similar letter combinations and are confusing, adding a company's full name *does not dispel* the confusion, makes no sense on its face and is simply an instruction to tell the jury how it must think.

If the court exercised its discretion to give an instruction to the jury about how to think or how to be impacted by what it sees, reads, and hears, there might be no end to the instructions that the court would also be dutybound to give to be fair to both sides. In fact, Alarm Protection proposed an alternative jury instruction that is every bit as logical, proceeding from common sense to say, "the more well known a trademark is, the more aware the public is of even a small difference." (DE 510, p. 32, Alarm Protection's alternative proposed jury instruction no. 22) In support, Alarm Protection cited *DVD Licensing Corp. v. Body Action Design,* 846

36

F. 2d 727, 729 (Fed. Cir. 1988), which essentially stands for the proposition that where a trademark or brand is well- known, confusion is less likely. The district court refused to give that instruction, also. In fact, the district court explained that it did not wish to instruct the jury on matters that were efforts to persuade the jury as to how it should decide fact issues but that those were subjects of proper argument by the parties. (DE 551, p. 50:17-23)

The part of the instruction about full company names contained in the second sentence is not supported by any legal authority cited by ADT and is actually contrary to established law. *See NEC Electronics, Inc. v. New England Circuit Sales, Inc.,* 722 F. Supp. 861, 864 (D. Mass. 1989) (no likelihood of confusion between NEC and NEC Marks because NECS uses a logo and prominently identifies the full company name along with the "NECS" acronym). Instructions that attempt to address factual situations and patterns from a common sense or logical perspective are not proper jury instructions; they do not truly reflect matters of law but are matters of guidance. If matters of additional guidance are to be offered to the jury, that is within the sound discretion of the trial judge. *See Gehring v. Case Corporation*, 43 F. 3d 340, 343 (7th Cir. 1994). On this issue, the trial judge may have said it best: "I will say that very often lawyers think that anything the appellate court says makes it proper for an instruction…" (DE 551, pp. 48:21-49:2) In *Gehring*, the Seventh Circuit, affirming the judge's decision not

to give an instruction about a permissible inference in the case, analyzed the problem in a way that could apply equally well to the present case:

> Gehring also wanted the judge to instruct the jury about one permissible inference: that if it did not believe the employer's explanation for its decisions, it may infer that the employer is trying to cover up age discrimination. *This is a correct statement of the law, but a judge need not deliver instructions describing all valid legal principles.* Especially not when the principle in question describes a permissible, but not an obligatory, inference. Many an inference is permissible. Rather than describing each, the judge may and usually should leave the subject to the argument of counsel. Gehring's lawyer asked the jury to draw this inference; neither judge nor defense counsel so much as hinted that any legal obstacle stood in the way. Instructions on the topic were unnecessary.

*Id.* at 343. (emphasis added) (internal citations omitted).

Finally, this is a case that is uniquely appropriate for a jury. While there are commentators and others who have controversially opined that certain types of commercial disputes – typically those involving complex commercial transactions or contracts – may not be best served by the jury system, this is not such a case. This is a case about whether people who are much like these jurors are able to discern one company from another based upon their names, logos, symbols and practices. These jurors are from the same population as customers who are allegedly impacted, in the same class of people alleged to be affected here: potential or actual consumers of security alarm services. They are uniquely qualified to decide the fact question of whether there is a likelihood of confusion

based upon sales practices, the nature of the acronym or letter combination used by the two competitive companies, or otherwise. *See Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,* 605 F. 3d 931, 941 (11th Cir. 2010) (reversing a summary judgment on the issue, this Court stated, "likelihood of confusion generally is a question of fact") (internal citation omitted). ADT requested a jury trial, got it, and truly had its day in court. (DE 151, p. 31) As the trial judge properly decided within his discretion, the jurors did not need further instructions about *how* to exercise their common sense and judgment on this matter so plainly within their comprehension.

No law required the giving of the instruction sought by Plaintiffs, which was inaccurate in its execution, anyway. The district court did not abuse its discretion in refusing to instruct the jury about how to be impacted by the nature of the combinations of the letters.

## III. THE DISTRICT COURT DID NOT ERR BY REFUSING TO INSTRUCT THE JURY ON ADAM SCHANZ'S INDIVIDUAL LIABILITY

As set forth above, a district court abuses its discretion by refusing to give a requested instruction "only when (1) the requested instruction correctly states the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *See Watkins, supra*, 775 F. 3d at 1291. ADT proposed a couple of instructions to

advise the jury that Adam Schanz could be individually liable for trademark infringement on some basis. (DE 510, p. 13, 16-21 – Plaintiff's proposed jury instructions 19 and 20)[5]

The district court did not err in refusing ADT's request. Even if ADT could show that the jury instruction(s) was an accurate statement of the law, and the issue was properly before the jury, ADT could not show that the failure to give the instruction caused any prejudice to ADT in this trial. That is so because: 1) the jury found that the corporate defendants were not liable, so that, based upon the logic and language of the instructions, the jury could not have found that Schanz was liable; 2) the proposed instruction was substantively included in other jury instructions; and 3) the jury was consistently informed that Adam Schanz could be personally liable.

ADT's theme throughout the trial was that Schanz was the owner and the decision-maker for the Alarm Protection Technology entities. ADT wanted an instruction that Adam Schanz could be liable as the individual who directed the companies to commit alleged Lanham Act violations. The operative wording is

---

[5] There is some confusion as to whether ADT sought just one or both of these instructions. When the district court asked which instructions ADT wanted the court to consider, ADT only identified instruction 20. Yet ADT's bench memo and the argument in its brief seem to apply more to instruction 19 (See DE 513; Initial Brief at 37-39). This Court could alternatively find this issue has been waived, based upon the failure to make a clear objection. See Fed. R. Civ. P. 51(c) (to object to a jury instruction, party must state "distinctly" the matter objected to and grounds for the objection).

whether Schanz "actively and knowingly caused infringement as a moving, conscious force…" (DE 510 at p. 13, Proposed Instruction No. 19) However, the jury found that there was no trademark infringement by anyone, including the companies. Both proposed instructions, of course, require an infringement or other violation of the law (instruction 19 reads "…cause infringement…"; instruction 20, addressing vicarious liability of a company owner requires, "…wrongs of the company…") (See DE 510, pp. 13, 16) Thus, the jury could consistently find only that Adam Schanz did not direct, or "actively and knowingly cause" infringement and that Schanz was not liable for "wrongs of the company." So even if a separate instruction had been given, the end result would be the same based on the jury's factual conclusions as to ADT's claims against the companies. This is particularly true since the jury was instructed that "a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company." (DE 552, p. 94:15-17) Thus, if the jury believed that Schanz took actions that constituted trademark infringement, the jury was instructed to impute those actions to the companies. Yet the jury found no infringement by the companies. There was no prejudice to ADT by the District Court's decision not to give this jury instruction.

Second, the district court recognized that there was no evidence that Adam Schanz "misrepresented anything as a direct – as an actor selling. You have

brought in nobody who said that Schanz misrepresented his company. And if he said I'm from Alarm Protection Technology, that's what he said, we have nothing to contradict that. So that I don't think is an issue." (DE 550, p. 81:13-18)  The district court's observations are supported by the record. No witness testified that Schanz took actions himself that violated the Lanham Act.

Third, part of this Court's review for harmless error requires that the Court examine whether the substance of the requested instruction was covered by another instruction which was given. *Booth, supra,* 757 F. 3d at 1208 (quoting *Goulah, supra,* 118 F.3d at 1485). Here, the Eleventh Circuit Pattern Instructions include the instruction – which was given by the district court to the jury – that "[a] corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice." (DE 552, p. 94:11-13)  The judge also instructed the jury in the general instructions for Count I that they were to consider Adam Schanz's liability when Adam Schanz was included as an individual in the judge's instructions regarding Count I. (DE 552, p. 98:7-15)  Likewise, Schanz's name was included separately on the jury verdict forms and there was never any instruction or argument as to any limitation on the capacity in which Schanz could be found liable. (DE 524, 525) Indeed, to an ordinary non-attorney member of the jury, the inclusion of Adam Schanz's name on the verdict forms and in the jury instructions made it clear that he could be personally liable for his actions.

42

Finally, there were no limitations on ADT's argument as to Schanz's liability during its closing argument, or to evidence put on by ADT throughout the trial. In fact, in its closing, ADT devoted significant time to its argument that Mr. Schanz had violated the law, and confidently told the jury, "We've covered Mr. Schanz's knowledge and experience and his actions." (DE 552, pp. 20:16–23:15, 27:1-2)

Based upon the fact that the jury found the corporations not liable, and for the additional reasons stated above, the district court did not err in refusing to give additional instructions relating to Adam Schanz' s individual liability.

## IV.  **ADT WAIVED ANY ISSUE ABOUT WHETHER THE COURT SHOULD REVERSE AND ENTER JUDGMENT IN ADT'S FAVOR**

In Section IV of its Brief, ADT argues that this Court may weigh the evidence on appeal and render judgment for ADT if it concludes that no "fair-minded jury" could return a different verdict on the evidence presented. (Initial Brief at 40) Then ADT launches into a discussion of the claims and the evidence as if to retry the case before this Court. While Alarm Protection asserts that there was much more than sufficient evidence before the jury to support its verdict, this Court need not (and may not) reach that issue because ADT did not preserve this issue for appeal by filing the required rule 50(b) motion (or even the preliminary Rule 50(a) motion).

Federal Rule of Civil Procedure 50(b) states as follows:

> (b) **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by the verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2)  order a new trial; or
> >
> > (3)  direct entry of judgment as a matter of law.

ADT did not file a post-verdict Rule 50(b) motion seeking either judgment as a matter of a law or a new trial, nor did it file a Rule 59 motion seeking a new trial. Based upon that fact alone, a court of appeal does not have the power to grant either a judgment as a matter of law or a new trial. *See Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, ___ U.S. __, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006).

In *Unitherm*, the defendant moved for a directed verdict under Federal Rule of Civil Procedure 50(a) based on legal insufficiency of the evidence. *Id.* at 984. The court denied the motion, the jury returned a verdict for the plaintiff, and the defendant neither renewed its motion for judgment as a matter of law pursuant to Rule 50(b) nor moved for a new trial pursuant to Rule 59. *Id*. On appeal, the

defendant sought to argue that there was insufficient evidence to sustain the verdict. *Id*. The appellate court agreed and reversed. *Id*. The United States Supreme Court granted certiorari. *Id*.

The Supreme Court analyzed Ruled 50(a) and (b) and its past decisions. The Supreme Court stated:

> This Court has addressed the implications of a party's failure to file a postverdict motion under Rule 50(b) on several occasions and in a variety of procedural contexts. This Court has concluded that, "[i]n the absence of such a motion" an appellate court [is] without power to direct the District Court to enter judgment contrary to the one it had permitted to stand." This Court has similarly concluded that a party's failure to file a Rule 50(b) motion deprives the appellate court of the power to order the entry of judgment in favor of that party where the district court directed the jury's verdict, and where the district court expressly reserved a party's pre-verdict motion for a directed verdict and then denied that motion after the verdict was returned. A postverdict motion is necessary because "[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." Moreover, the "requirement of a timely application for judgment after verdict is not an idle motion" because it "is…an essential part of the rule, firmly grounded in principles of fairness."

*Id*. at 985-986 (internal citations omitted). Based upon its analysis, the Supreme Court reversed the appellate court, finding that the defendant did not preserve the issue for appeal. *Id*. at 986. The Supreme Court unambiguously ruled that in order

to pursue on appeal the entry of a judgment or a new trial, the party must have moved under Rule 50(b) after the verdict, seeking that relief. *Id.* at 986. As the Court stated, "…we hold that since respondent failed to renew its preverdict motion as specified in Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals." *Id.* at 989.

This Court has acknowledged and employed *Unitherm* multiple times since that decision. *See, e.g., Hi Ltd. Partnership v. Winghouse of Florida, Inc.,* 451 F. 3d 1300, 1301-02 (11th Cir. 2006) (rejecting Hooters' request to consider motion for a new trial or judgment as a matter of law because the Supreme Court in *Unitherm* made clear that a party may not even pursue "a new trial on appeal unless that party makes an appropriate post-verdict motion in the district court"); *Johnson v. Guerrieri Management, Inc.,* 437 F. App'x 853, 857-58 (11th Cir. 2011) (applying *Unitherm* to foreclose even review for plain error because an appellate court has no authority to consider a challenge to the sufficiency of the evidence unless the appellant filed a Rule 50(b) motion in the district court).

Based upon the Supreme Court's unambiguous ruling in *Unitherm*, an appellant may not raise on appeal a request for judgment as a matter of law or for a new trial where the party has not filed the appropriate Rule 50(b) post-verdict motion. Because ADT did not file such a motion in this case, ADT has waived the issue and deprived this Court of the power to consider such a request, entirely

46

foreclosing the issue raised in Section IV of its principal brief.

Notwithstanding that the *Unitherm* case completely resolves the issue raised above, even if that had not been the case – if ADT had made the appropriate Rule 50(b) motion – Alarm Protection submits that there was sufficient evidence for the case to go to the jury and to support the verdict rendered. Because of the waiver, APT will only address a few of the highlights of the evidence to rebut some of the more obvious deficiencies in ADT's arguments about the evidence.

ADT argues this point by highlighting the best of its evidence and essentially asking this Court to ignore all evidence favorable to Alarm Protection. No appellate review process creates a presumption on factual issues in favor of the appellant. Of course, it works in the opposite way. So while ADT cherry picks the evidence from the expert witnesses, it ignores the favorable testimony offered by Dr. Sarel, Alarm Protection's expert. For example, as set forth in the Statement of Facts at pages 11-13 above, while each expert conducted a survey to address likelihood of confusion, the surveys were conducted using very different principles. Alarm Protection submits that Dr. Sarel's survey was a much better proxy for real world conditions. Regardless, as the district court properly instructed the jury, it was up to the jury to decide whether to rely upon the experts' respective testimony. (DE 552, p. 97:1-6) And while ADT argues that Alarm Protection's intent might be inferred because the companies' respective acronyms are similar, it

47

ignores Mr. Schanz's testimony about Alarm Protection's sales practices and both his and Mr. Dahl's testimony about intent.  (See discussion of testimony above at pp. 7-8) As ADT itself argues, its trademark is the most well known in the home security business in the country. That fact, alone, the jury was free to conclude, may significantly decrease any likelihood of confusion. The jury was instructed on the seven factors to look at to decide the trademark infringement issue, and there was evidence from which it could decide this case however it wished. (DE 552, pp. 100-103) The jury was instructed that it could consider other factors besides those seven. (DE 552, p. 100) It is not appropriate to change the rules after the fact and second-guess the jury's deliberations. ADT is not entitled to have a court take the issue away from the jury, put blinders on, and simply review the evidence that ADT wishes the court to see. That is not the function of the court, and the jury properly performed its function here after the district court properly teed up the issue.

Based upon the foregoing, even if ADT had not waived this issue, there is no valid argument that a fair-minded jury could *only* decide the case in favor of ADT. Regardless, ADT did waive this issue by failing to file a Rule 50(b) motion, thereby depriving the Court of the power to consider it.

## **CONCLUSION**

Because the district court did not err or abuse its discretion with respect to the jury instructions, the district court's judgment and the district court's decision on the bond should be affirmed. Moreover, because none of the issues raised on appeal go to Count II, Deceptive Trade Practices, the judgment should be affirmed with respect to Count II, in any event. The decision on the separate bond appeal should follow the decision in the main appeal. Based upon the foregoing, the judgment and the district court's decision on the bond should be affirmed in all respects.

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that pursuant to Fed. R. App. P. 32(a)(7) that this

Brief contains no more than 12,473 words.


*/s/Jack J. Aiello*_____
**JACK J. AIELLO**
Florida Bar No. 440566

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 28, 2015, I electronically filed the foregoing with the Clerk of the Court for the Eleventh Circuit by using the CM/ECF system and seven (7) paper copies were sent to the Clerk by FedEx.  I also certify that the foregoing document is being served electronically by the Notice of Docket Activity transmitted by the CM/ECF system on the following party:

C. Sanders McNew, Esq.
2385 NW Executive Center Drive
Suite 100
Boca Raton, FL 33431
mcnew@mcnew.net
Counsel for Plaintiff/Appellant

Respectfully submitted,

*/s/Jack J. Aiello*
Jack J. Aiello, Esq.
Florida Bar No.: 440566
Michael W. Marcil, Esq.
Florida Bar No.:  091723
Jennifer Nicole, Esq.
Florida Bar No.:  00114578
*Attorneys for Appellees*
**GUNSTER, YOAKLEY & STEWART, P.A.**
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL  33401
Telephone:  561-655-1980
Facsimile:   561-655-5677
jaiello@gunster.com
mmarcil@gunster.com
jnicole@gunster.com